UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00073-GNS

THE ESTATE OF DESMOND LEAVELL,
James Leavell and Nancy Watkins, Administrators;
and
DEANDRE QUARLES                                                                       PLAINTIFFS

v.

WAL-MART STORES EAST, LIMITED
PARTNERSHIP                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 34). The matter is now ripe for adjudication. For the reasons that follow, the motion is **GRANTED**.

### I.    BACKGROUND

#### A.    Statement of Facts

On July 9, 2017, two African-American males shoplifted electronic merchandise from a Hopkinsville, Kentucky Wal-Mart store operated by Defendant Wal-Mart Stores East, Limited Partnership ("Wal-Mart"). (Def.'s Mem. Supp. Mot. Summ. J. 3, DN 34-1). These men were seen carrying out the act by the store's video surveillance system. (Def.'s Mem. Supp. Mot. Summ. J. 3; Def.'s Mot. Summ. J. Ex. 2, DN 34-3). Wal-Mart Asset Protection Associate Melanie Beard ("Beard") reviewed this footage, but she was unable to identify the two men. (Def.'s Mem. Supp. Mot. Summ. J. 4).

On approximately July 13, 2017, Beard was at the Hopkinsville Police Department and showed Police Lieutenant Kyle Spurlin ("Lt. Spurlin") photographs of the men from the surveillance footage. (Def.'s Mem. Supp. Mot. Summ. J. 4). Lt. Spurlin told Beard the men from

1

the photographs looked like Plaintiffs Deandre Quarles ("Quarles") and Desmond Leavell ("Leavell") (collectively "Plaintiffs").[1] (Def.'s Mem. Supp. Mot. Summ. J. 4).

Following up on this lead, Beard reviewed Plaintiffs' Facebook pages and driver's license photographs and determined, incorrectly so, that Plaintiffs were the men shown in the surveillance footage. (Def.'s Mem. Supp. Mot. Summ. J. 5, 10-11). On August 1, 2017, Beard completed criminal complaints alleging that Plaintiffs shoplifted from Wal-Mart on July 9, 2017. (Def.'s Mem. Supp. Mot. Summ. J. 5; Def.'s Mot. Summ. J. Ex. 4, DN 34-5). On August 7, 2017, Quarles turned himself into police and was bonded out that day. (Def.'s Mem. Supp. Mot. Summ. J. 5). On August 8, 2017, Leavell turned himself in and was bonded out that same day. (Def.'s Mem. Supp. Mot. Summ. J. 5). After the arrests, Lt. Spurlin obtained and reviewed the Wal-Mart surveillance footage and determined that he previously misidentified Plaintiffs as the men in the video. (Def.'s Mem. Supp. Mot. Summ. J. 5). The charges against Plaintiffs were dropped on September 1, 2017. (Def.'s Mem. Supp. Mot. Summ. J. 5).

**B.    Procedural History**

On April 6, 2018, Plaintiffs filed suit against Wal-Mart in Christian Circuit Court. (Compl., DN 1-2). On May 11, 2018, Wal-Mart removed this matter to this Court on federal question jurisdiction grounds. (Notice Removal ¶¶ 3-4, DN 1). On January 17, 2019, Plaintiffs filed an Amended Complaint to substitute Leavell's estate as a plaintiff. (Am. Compl., DN 20). The Amended Complaint asserts claims for discrimination, false arrest, false imprisonment, false search, and false charges. (Am. Compl. ¶ 6). On July 31, 2019, Wal-Mart moved for summary

---

[1] Desmond Leavell has since passed away and is represented in this case by James Leavell and Nancy Watkins, administrators of his estate.

2

judgment on all claims. (Def.'s Mot. Summ. J., DN 34). Plaintiffs responded, and Wal-Mart replied. (Pl.'s Resp. Def.'s Mot. Summ. J., DN 37; Def.'s Reply Mot. Summ. J., DN 38).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action via federal question pursuant to 28 U.S.C. § 1331. The Amended Complaint appears to allege violations of Title II of the Civil Rights Act, 42 U.S.C. § 2000a(a), which presents a federal question.[2] (*See* Am. Compl. ¶ 6). The Court has supplemental jurisdiction over the state claims because they arise from the same case and controversy as the federal claim. 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment as a matter of law should be granted if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[2] It is actually Wal-Mart that articulated Plaintiffs' race-based claim as falling under Title II. (Notice Removal ¶ 3). Plaintiffs, however, did not contest this interpretation of their claim.

586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Plaintiff makes claims for discrimination, false arrest, false imprisonment, false search,[3] and false charges. (Am. Compl. ¶ 6). Wal-Mart argues that each of these claims should be dismissed. (Def.'s Mot. Summ. J. 1).

### A. False Arrest and False Imprisonment

Under Kentucky law, false arrest and false imprisonment claims are analyzed as the same claim. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). To prevail on such claims, a plaintiff must prove that (1) he was detained and (2) the detention was unlawful. *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *8 (W.D. Ky. May 11, 2017) (citing *Jefferson Dry Goods Co. v. Stoess*, 199 S.W.2d 994, 996 (Ky. 1947)). "If there is probable cause for the arrest, then it was lawful." *Id*. (citing KRS 431.005(1)(c)). If an arrest was made pursuant to a duly executed warrant, then it was lawful. *Dunn*, 226 S.W.3d at 71.

Plaintiffs here have failed to prove, or even to allege, either detention by Wal-Mart or that such a detention was unlawful, both of which are required elements for a claim of false arrest/imprisonment. The Amended Complaint merely alleges that Plaintiffs were "falsely

---

[3] Wal-Mart argues that Kentucky law does not recognize a claim for false search. (Def.'s Mem. Supp. Mot. Summ. J. 17). Plaintiffs do not respond to this argument, and the Court is unaware of any legal basis for this claim. As such, it will be dismissed.

arrested," but it does not claim that Wal-Mart or a Wal-Mart employee arrested or otherwise detained Plaintiffs. (Am. Compl. ¶ 4). Rather, Plaintiffs admit it was the Hopkinsville Police Department that served them with arrest warrants. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Plaintiffs were then detained at the Christian County Jail, not at Wal-Mart or by Wal-Mart employees. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Admittedly, it was Beard's affidavit that resulted in the criminal complaint against Plaintiffs.[4] (Def.'s Mem. Supp. Mot. Summ. J. 5; Def.'s Mot. Summ. J. Ex. 4, at 2, 4). Even so, Plaintiffs have failed to explain how their claim of false arrest/imprisonment should proceed against Wal-Mart when Wal-Mart never actually detained them in any way. *See Great Atl. & Pac. Tea Co. v. Billups*, 69 S.W.2d 5, 6 (Ky. 1934) ("Any deprivation of the liberty of plaintiff *by defendant*, or any detention of him, for however short a time, *by defendant*, without plaintiff's consent, against his will, whether it was by actual violence, threats, or otherwise, constitutes an arrest." (emphasis added) (citation omitted)). Moreover, because the arrest was made pursuant to a warrant, it was lawful.

Plaintiffs rely on *Wal-Mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616, 618 (Ky. App. 1994), in arguing that the question of whether a detention was lawful is one for the jury. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). In *Mitchell*, however, the plaintiff alleged and then testified at trial that an employee of Wal-Mart had "manhandled" him, taken him back into the store against his will, and then interrogated him in a locked room for thirty minutes. *Id.* at 617. Here, by contrast,

---

[4] There is some indication that a defendant can challenge the validity of a search warrant if he can show "(1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989) (discussing *Franks v. Delaware*, 438 U.S. 154 (1978)). This line of cases, however, deals with the procedure for challenging the veracity of a search warrant, not a private cause of action against a non-governmental affiant such as Beard.

Plaintiffs do not contend that they were ever detained or otherwise constrained at a Wal-Mart store or by a Wal-Mart employee. In fact, Plaintiffs have not indicated that they have had *any* contact whatsoever with a representative of Wal-Mart in connection with this incident.

Plaintiffs also cite to KRS 433.236 to argue that Beard did not act reasonably in her investigation of the shoplifting incident. (Pl.'s Resp. Def.'s Mot. Summ. J. 9-10). KRS 433.236, however, provides the standards a security guard should use when temporarily detaining or arresting a shoplifting suspect. Again though, Plaintiffs have not pleaded that Wal-Mart detained or arrested them. In fact, it appears that Plaintiffs were not even at Wal-Mart on the night in question, so a discussion of KRS 433.236 is inapposite.

Because Plaintiffs have failed to allege unlawful detention or any detention whatsoever by Wal-Mart, summary judgment in favor of Wal-Mart on this claim is appropriate.

### B. False Charges and Malicious Prosecution

Wal-Mart argues, and Plaintiffs do not refute, that Kentucky law does not recognize a claim for "false charges." (Def.'s Mem. Supp. Mot. Summ. J. 8). As such, the false charges claim will be analyzed as one for malicious prosecution. Under Kentucky law, a malicious prosecution action requires a showing that the defendant (1) initiated, continued, or procured a criminal or civil judicial proceeding; (2) without probable cause; (3) acted with malice; (4) the proceeding terminated in the plaintiff's favor; and (5) the plaintiff suffered damages as a result of the proceeding. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). Malice is defined in the criminal context as "seeking to achieve a purpose other than bringing an offender to justice . . . ." *Id*. "[A]ctions for malicious prosecution have traditionally been disfavored due to the chilling effect on those considering reporting a crime." *Broaddus v. Campbell*, 911 S.W.2d 281, 285 (Ky. App. 1995) (citing *Reid v. True*, 302 S.W.2d 846 (Ky. App. 1957)).

Wal-Mart concedes three of the five elements: Beard procured the criminal judicial proceeding against Plaintiffs via the criminal complaints; the charges against Plaintiffs were dropped; and Plaintiffs, presumably, suffered some damage. (Def.'s Reply Mot. Summ. J. 4). Plaintiffs, however, have failed to plead or offer any evidence that Beard or anyone involved acted with malice against Plaintiffs. In fact, Quarles admitted in his deposition that he did not know Beard, nor did he know of any reason why she might have targeted him and Leavell in particular. (Quarles Dep. 124:24-125:14, Aug. 31, 2018, DN 34-6). Similarly, Leavell's father provided no evidence to support the idea that his son was specifically targeted by Beard or another Wal-Mart employee. (Leavell Dep. 13:10-16, Apr. 3, 2019, DN 34-9). Since malice is an essential element of a claim for malicious prosecution, this defect alone is sufficient to warrant summary judgment on this claim.

Plaintiffs do make some arguments that indirectly suggest a lack of probable cause. Namely, Plaintiffs contend that Beard's determination that Plaintiffs were the shoplifting suspects was based on unreliable evidence, primarily Lt. Spurlin's identification from a grainy photo on a cell phone. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Plaintiffs then contend Beard took no additional steps, such as interviewing the Plaintiffs or showing the full surveillance video to the officers, to confirm that Plaintiffs were in fact the suspects. (Pl.'s Resp. Def.'s Mot. Summ. J. 7).

In Kentucky, a determination of probable cause is usually a question of law resolved by the court:

> What facts and circumstances amount to probable cause is a question of law. Whether they exist or not, in any particular case where the evidence is conflicting, is a question of fact, to be determined by the jury. But where there is no conflict in the evidence, whether the facts shown amount to probable cause, is ordinarily a question of law for the court.

*Craycroft v. Pippin*, 245 S.W.3d 804, 806 (Ky. App. 2008) (quoting *F.S. Marshall Co. v. Brashear*, 37 S.W.2d 15, 17 (Ky. 1931)). Plaintiffs here have not disputed the evidence upon which Beard made her determination that Plaintiffs were the shoplifting suspects. Because no facts are in dispute, the question of probable cause is one for this Court to decide. *See Jones v. Ernspiker*, No. 2008-CA-001316-MR, 2010 WL 1404420, at *1 (Ky. App. Apr. 9, 2010) ("As the facts were not in dispute, the trial court properly analyzed the probable cause issue as a matter of law."). Kentucky courts have clarified the relevant standard:

> Probable cause, in cases of malicious prosecution, has been frequently defined by the courts as that which affords a reasonable ground of suspicion supported by circumstances sufficiently strong within themselves to warrant a cautious person in the belief that the person accused is guilty of the offense of which he is charged. And it has been held that while mere conjectures and suspicions will not warrant a prosecution, credible information received from others might well be enough to induce such action, although proof that the information came from an unreliable source would be important in showing that the information was such that a reasonable man would not act on it.

*Id.* (quoting *Goode v. Commonwealth*, 252 S.W. 105, 106 (Ky. 1923)).

Before filing an affidavit as part of the criminal complaints, Beard here relied on the identification of Plaintiffs by Lt. Spurlin, who was familiar with both men. (Def.'s Mem. Supp. Mot. Summ. J. 9). She then compared the video surveillance photos with the driver's license photographs and Facebook photographs of Plaintiffs. (Def.'s Mem. Supp. Mot. Summ. J. 10-11). Taken together, these steps were sufficient to afford reasonable grounds for suspicion that Plaintiffs were guilty of the offense. While Plaintiffs' point that this situation could have likely been avoided if Beard had just shown the surveillance footage to Lt. Spurling prior to initiating criminal action is well-taken, it does not transform this case into one based on "mere conjectures and suspicions." (Pl.'s Resp. Def.'s Mot. Summ. J. 8). Moreover, Plaintiffs have not argued that Beard's source were unreliable; rather, her sources were local police officers familiar with both

Plaintiffs. As such, Plaintiffs have failed to show a lack of probable cause to support a claim for malicious prosecution.

In sum, Plaintiffs have failed to prove two essential elements of a claim for malicious prosecution. Plaintiffs have completely failed to plead or provide evidence of malice nor have Plaintiffs shown a lack of probable cause. As such, Plaintiffs' claim for false charges and malicious prosecution fail as a matter of law.

### C. Race Discrimination

The Amended Complaint identified Wal-Mart as a public accommodation and stated that Plaintiffs "feel that at least part of the motivation" of Wal-Mart's conduct was Plaintiffs' race. (Am. Compl. ¶ 5). Wal-Mart interpreted this claim for removal purposes as falling under 42 U.S.C. § 2000a(a), which guarantees equal access to any place of accommodation without discrimination on the basis of race. (Notice Removal ¶ 3). In its motion for summary judgment, Wal-Mart argues instead that Plaintiffs' race-based claim falls under 42 U.S.C. § 1981, which provides for equal rights to make and enforce contracts. (Def.'s Mot. Summ. J. 11). Plaintiffs have not attempted to elucidate on what factual or legal grounds their race-based claims are based. In fact, Plaintiffs' Response to the present motion in no way discusses their race-based claims or attempts to refute Wal-Mart's argument on this point.

The most relevant test to analyze Plaintiffs' claim, according to Wal-Mart, is for alleged discrimination in the making of contracts in a commercial context, which has been applied to analyze claims made by disgruntled alleged shoplifters.[5] *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir.). To state a prima facie case for discrimination in a commercial establishment, the plaintiff must show:

---

[5] As noted, Plaintiffs have not objected to this articulation of their own case.

> (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id*. at 872.

Plaintiff has not stated *a prima facie* case for commercial discrimination or demonstrated a genuine dispute of material fact on this issue. Plaintiffs are, presumably, members of a protected class, but they have not explained how they sought to make or enforce a contract for services provided by Wal-Mart—i.e., they were not in the process of buying and did not attempt to buy anything from Wal-Mart. *See id.* at 873 ("The plaintiff need only show that she intended to make a purchase and was asked to leave the establishment in order to prevent her from making the purchase on account of her race . . ."). Moreover, Plaintiffs have not pleaded or otherwise demonstrated that they were deprived of services or received services in a hostile manner compared to similarly situated persons outside of the protected class. Again, Plaintiffs cannot demonstrate they were denied services because they never attempted to receive services from Wal-Mart at any time relevant to this case. As such, Plaintiffs' race-based claims fail.[6]

---

[6] Wal-Mart also argues that any race-based claims under the Kentucky Civil Rights Act ("KCRA") and KRS 344.120 must also fail for the same reasons. (Def.'s Mem. Supp. Mot. Summ. J. 16). Plaintiffs have not articulated a claim under KRS 344.120 or rebutted Wal-Mart's contention that any such claim must be dismissed. *See Ammerman v. Bd. of Educ., of Nicholas Cty*., 30 S.W.3d 793, 797-98 (Ky. 2000) ("The [KCRA] is similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law.").

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 34) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

January 6, 2020

cc: counsel of record